Madam Clerk, call the next case. Ok, ladies and gentlemen, have we figured out how many people are arguing on each side? Is it one, two, three? How many? One for your side. One for your side. Ok, one and one. Now we've got a couple of issues here that we may want to probe into. So what I've kind of decided on this one is I'll give you initially 20 minutes each and 5 minutes in rebuttal. I'm going to hold you to the time. If you need extra time because of our questions, we're probably going to be inclined to give them to you, but if you get repetitious, we'll cut you off. So with that, commence when you're ready. Good morning, Your Honor. May it please the Court. My name is Michael Rothstein. I'm the attorney for the Metropolitan Water Reclamation District. The appeal today involves an award of $36 million in economic loss damages for claims involving trespass and violations of an alley easement. There are three reasons for reversal of the damages award. First, the award is barred by the economic loss doctrine. Before you go too much further, your opponents totally disagree with that. Tell me why they're wrong. They are wrong because they rely on a very expansive argument that the economic loss doctrine does not apply to intentional torts. Okay, but before we – that is true. That is their argument that it doesn't apply to intentional torts, and you haven't got a case that says that it does. It's kind of virgin territory right now on that question. But why shouldn't we hold it as being forfeited? You never raised it till when? On the waiver issue, Your Honor, it was first raised – Well, actually, it's not waiver. It's forfeiture, but go ahead. All right. On the forfeiture issue, Your Honor, it was first raised on a reply brief submitted by the district in connection with a motion for a directed judgment midway – maybe about a third of the way through the damages trial. And as we have pointed out to the court, only cases in the Rosas-Lippo v. Hanson in particular have held that whether or not the economic loss doctrine applies is not an issue that has to be raised as an affirmative defense and does not have to be brought by motion. In particular, in the Rosas-Lippo case, it was not even raised until after the conclusion of the trial in a post-trial motion. And the reason is it goes through the very nature of the case. Because in Illinois, since Mormon and all its progeny, it's been very, very clear that the general rule in tort actions is there is not recovery for economic losses. There are some exceptions, but the general rule, no recovery for economic losses. So it is inherent within the action that if you were bringing a tort action, the scope of damages would not include economic losses. If one wants to recover – That's an interesting theory because seeking the wrong remedy in Illinois is not fatal to a cause of action. 2-617 of the code specifically says it's not fatal, and that if you raise an issue with improper damages, the plaintiff is to be given an opportunity to amend their complaint. In this particular case, you waited through years of litigation before ever raising the question of economic loss, and you wait until after the plaintiff has already put their – or the counter-plaintiff, actually – has already put on their entire case, and then you turn around in a reply brief, no less, and say the economic loss doctrine bars these damages. Right. So if you look at the history of the case, Your Honor, the majority of the time on this case was spent as an injunction matter. Originally, the project company, they acquired title to the property. We understand that. I don't want to lose that thread that Justice Hoffman just raised, but I think it's important. Yes. What are we to do with the fact that all of this time had gone by, that there was no opportunity for them to respond or conduct the kind of discovery that may have been necessary? Had this been raised earlier? All of those things. What are we to do with that when this issue comes so late in the case until then? So we've cited a case to the court where the issue was whether or not liquidated damages needed to be pledged as an affirmative dissent, the fact that liquidated damages might be a penalty. And the appellate court in that case – I think it was the appellate court, could have been the Supreme, but I think the appellate court – said that it is just known that certain things, that a liquidated damages clause would be something that would have to be shown to be not a penalty and reasonable. It did not have to be raised as an affirmative dissent or brought by motion. And then again, going back to Rosa's lipo – But in your case, it was more than that, just raising it. I mean, you actively participated. Your client actively participated as though, you know, it didn't exist in the case. So it was more than just not raising it. I mean, you were questioning them along the lines of – I'm really flabbergasted at how you could expect any kind of fair – would that be fair to your opponents? What would they do with that? It's like two years had gone by. Sure. And, Your Honor, the reason that we believe that it is fair is that – I mean, that was kind of a rhetorical question. Of course you take it as fair. Of course, Your Honor. And so the reason, not just what I think, but the reason that it is fair, Your Honor, is anyone who brings a tort claim knows that unless there's an exception, they have to produce evidence of either personal injury or physical property damage. That's not true. Counsel, that's not true. Intentional interference with prospective economic advantage, intentional interference with contract, that doesn't apply. There's no injury to property or person there. And there are totally exceptions to the Mormon theory. But that's not the issue right now. The issue is why did you wait all these years, never even raise it in a motion, never bring it up until a reply brief, that you wanted to defend against the damages on the question of the Mormon doctrine? The Seventh Circuit says you can't do it. They've got a footnote on page 13 of their brief with out-of-state jurisdiction cases that are, my God, I don't know how many of these cited. You talk about a string cite, it's a big one. Every one of those cases say it can be waived if not raised timely. And in this particular case, you wouldn't really consider when you raise the time, would you? It certainly could have been raised earlier, Your Honor. Really? I can't speculate as to what the thoughts of trial counsel were. Now comes the real question. On the question of whether the issue was waived or forfeited or not, what's the standard of review? The standard of review here on whether or not the Mormon doctrine could be adopted. No, no, no, I didn't say that. I said on the question of whether the issue was forfeited, what's the standard of review? Waiver typically would be, you know, an abuse of discretion. So whether Mormon does or does not apply is a question of law. But whether you did or did not forfeit it by your behavior would be an abuse of discretion. Not in this case, Your Honor, because what the court was doing was applying the Illinois Code of Civil Procedure, and she was interpreting whether or not certain matters had to be raised as an affirmative matter, so it's not a surprise. And because her interpretation of that procedure was as a matter of law, this court would review that de novo. Well, surprise, though, she had a fine surprise. She had a fine surprise in prejudice, didn't she, in order to apply the rule that you're suggesting she applied? We think that she should have considered Rosa's Litho case and decided that it's not necessary, that it's inherent in the cause of action, so therefore it did not need to be fled. Okay. So it's outside of 213. Well, we know what you're arguing, but the question becomes, and it occurs to me, that on the question of whether you did or did not forfeit, that's a discretionary matter with the court, and it should be put to an abuse of discretion standard. On the question of whether Mormon does or does not apply these facts, that, in part, I agree with as a question of law, and that's a de novo review. And we would submit, Your Honor, that the interpretation of the Code of Civil Procedure would be interpreted de novo. Was this the type of a matter that needed to be raised either by an affirmative defense or by motion, you know, at an earlier stage in the proceedings? Well, 213 says anything that would be likely to take your opponent by surprise needs to be raised. And, indeed, Your Honor, unless there is an exception, if it's a tort case, you have an obligation to bring forward property damage or personal injury, and you do not take your economic loss. But, Your Honor, that's not the law. That's not the law. If what they seek is purely economic damages for disappointed commercial expectation without attendant property damage or personal injury, the Mormon doctrine can apply. And then there is a whole fleet of exceptions to that rule that the Supreme Court has acknowledged. There is no specific rule in any case that says that merely because no property damage or personal injury is alleged that they can't allege these damages. And then you've got some jurisdictional questions and some standing questions that really I don't understand, but we'll get to those in a minute. But now tell us for a moment why you think the Mormon doctrine does apply to this case even though, as I understand this record, your client was found to have intentionally interfered with easement rights and achieving exactly what they wanted to do, and that's to disrupt or attempt to prevent the construction of property on Michigan Avenue. The reason, Your Honor, is that the Illinois Supreme Court has held in the Morrow case that the state of mind of the defendant... Morrow was a breach of contract case, and it stands for the proposition that there are no punitive damages for intentional breach of contract, given a case that was not negligence-based, contract-based, or based upon willful and wanton misconduct that supports your proposition. So we were not able to find any cases in Illinois that directly dealt with the label intentional tort. What we have provided the court with is numerous cases dealing with willful and wanton, and with the general proposition that the question is not the subjective intent of the defendant, but it's the nature of the loss itself. That is the essence of the economic loss doctrine, is that economic losses should be recovered, the remedy should be in other areas of law, but not in tort. And so I agree, of course, that the Morrow case in particular can be distinguished on the particular matter at issue there. But what's important is the Supreme Court said that a pejorative characterization of defendant's state of mind, in that case willful and wanton, does not fundamentally alter the nature of the damage assault. And in addition, we've provided the court with... Well, the name of the case escapes me for a moment. It'll come to me. But that willful and wanton includes intentional conduct. It can't. It can also include unintentional conduct. The case says that willful and wanton is something less than intentional conduct, and that's the flood litigation case. Beyond the flood litigation case, Your Honor, and I'll come up with the site in a moment here, but with the case analyzing willful and wanton, and it was a case that was settled with DRCO versus Sioux Line Railroad, has a fairly exhaustive scholarly discussion of what willful and wanton means. Willful and wanton, indeed, can be a range, and the range can go all the way to intentional conduct and it can go to something less than intentional conduct, but maybe a little bit more than negligence. And because it includes willful and wantons can include intentional conduct, there are decisions of the Illinois Supreme Court that if intentional conduct was a bar to the application of Mormon, those cases could not have been decided the way they were. You mentioned the flood case. There was an allegation and an account in the flood case that the injury that occurred was willful and wanton. Now, if intentional conduct was a negligence-based nuisance that goes to the level of willful and wanton, it was a nuisance-based case, the person who drove that pylon through the thing didn't intend to flood anyone's basements. But in this particular case, your client was found to have intended to interfere with the rights of another person through blocking the easement. How is this different than intentional infliction with prospective economic advantage? The reason it's different than those two torts, and this is a Santucci case, Santucci found that those intentional interference with economic advantage and with contract were exclusions from Mormon for a very important reason and different than intent. The reason is that those torts historically are for the purpose of providing a remedy for lost commercial expectations. How is your case not that? How is this case not that? Because you can't look at the particular defendant in this case. It's the tort. The two torts that were alleged here were trespass, which is a well-recognized tort, and something that was called interference with easement. That's how they labeled it. If you look at the case law, and we provided it in our brief, interference with easement is really just a flavor of trespass. It's sort of within the trespass envelope. Trespass can be intentional. Trespass can be negligent. The way that the Supreme Court has been addressing Mormon issues is essentially, what is the nature of the tort? It's not relevant what the particular intent of the defendant in a given tort was. Is the tort part economic advantage? Let me give you an example. If you're walking across the street today and I'm driving my car and I strike you by accident, I could be found liable for negligence. Could I not? Indeed. If I intended to hit you with my car, it wouldn't be negligence anymore, would it? It could be battery. It would be, and that's only based upon my intent. Indeed. So they're both torts. No argument with that at all, Your Honor. What happens to do is what types of damages are recoverable, and economic loss damages are only recoverable when they fit within one of the exceptions. And there has never been an exception found in Illinois for trespass. There's never been an exception in Illinois found for easement. There have been exceptions found for torts which, by their very nature, only seek economic redress. You can have a trespass case that does not involve property damage. So the case about semantics, they labeled it incorrectly so they don't recover. I mean, what exactly are you saying? We're saying that they brought the wrong cause of action. If they wanted to recover economic loss, they needed to bring another cause of action, because economic loss would not recover. Would that cause of action be intentional interference with prospective economic advantage? They tried to bring that cause of action, Your Honor, and that's one that's clearly exempt for Mormons. However, they couldn't bring that. Isn't that the one the judge said, I'm not letting you do it, it's too late? And then at the end, after the trial, the judge decides that's sort of the route to get to the remedy? She didn't acknowledge that. We suggest that it was essentially what happened. But as we point out in our papers, they didn't plead and they did not prove a claim for intentional interference because they did not identify an identified third party with whom the district intended to interfere and who that interference caused them the damage they were seeking. They proved it. The judge seems to think they proved it. You may be saying maybe they didn't label it correctly. Are you saying that the entire finding by the judge is incorrect now, that they did not prove that there was intentional interference? I don't think you were challenging that. Your Honor, we're not challenging that. What we're challenging is whether or not there was an identified third party which caused them harm. The only third, after we filed our response to their motion, their 362 motion to amend here, after we filed that, they identified that Terra Museum was the third party. But as we pointed out, they didn't plead and prove that anything we did impaired their relationship with Terra. They had a contract with Terra. That contract went to fruition. There was no issue at all about any FM of losses with respect to their contract with Terra. What they're complaining about is their investment they made in the development, they didn't get the profit and the gain at least as quickly as they wanted in that bank. And that's exactly what the economic loss doctrine is supposed to protect parties from. They made an investment. Tort law is not where they get the insurance for their investment. This may not be a fair question, but I'm going to ask it anyway, Mr. Rossi. So if you were their attorney, what would be the right cause of action when the water district blocks the easement that is guaranteed to be at all times, MWD comes there and builds a post, puts a lock gate on it, and then they can't construct their luxurious Michigan Avenue building? What's the right remedy? Why wasn't it tried here? They had two, Your Honor, one of which was tried and rather successfully by the project company. The first was injunctive release. The first was injunctive release. They acquired title April 30, 2008. They made their first request for access to the alley, May 2, 2008. Three-and-a-half months later, they had their injunction. It was a very quick process. That was the remedy. In addition, and this goes to ñ It doesn't seem like it was that quick as far as the bank has to worry. They had a number of meetings with the district people that basically said, I was going to give you access and allow the back and forth. So you condensed that pretty well, but the record tells a different story about how long this went on. There's no question that there was controversy and discussion for a longer period of time, Your Honor. I didn't mean to suggest otherwise. The first time they made a request for access where they said, We're coming in, we'd like to go to the alley, was May 2, 2008. They had an injunction by August 2008. Their contract with TARA, their contract of purchase, gave them right to access to the property, did it not? They had a contract with TARA. Whether or not that contract in particular had that provision, I don't recall, Your Honor. Trust me, it does. Okay. It says they have rights of access to the property. Does that make them TARA's licensee for access purposes? I don't know what the label would be, but if they have the rights of TARA's access to the property, if they can step in TARA's shoes, they can step in TARA's shoes. We're not contesting that. Then that means that they have rights under the easement as licensees. If they're stepping in TARA's shoes, then so be it. And if they have rights as licensees, then you had no right to block their access even before their purchase. I wasn't making that argument, Your Honor. Okay. Forget about when they request to block them anyway. Right. I would say that it's a distinction without a difference. Well, let me say it a different way. It's a very important distinction. Your Honor, there were discussions about whether they could have access to the alley, but they didn't start asserting that right until after they closed on the property. You're suggesting they could have asserted that right earlier? They didn't. They didn't. Who knows why they didn't? I think they submitted evidence that you blocked their right. They had inspectors that were going in there. They couldn't get in. They wanted to construct all sorts of things over there. They couldn't get in. They just couldn't. They could enter from the other way, but they couldn't get in through the alley. This is why the timeline is important. That was all after May 2, 2008. What you just described were events after May 2, 2008. It did happen in that compressed period. Lots of discussions beforehand about what the district was trying to assert what it thought were were its rights under the easement, but it didn't occur before then. Well, you better skip on to a couple other issues here if you want to get to them.  All right. Thank you, Your Honor. All right. So the second ground for reversal is that their pleading that went to trial, their counterclaim, did not provide for a time period that their expert relied upon. Their pleading that they went to trial on, again, followed this line of we obtained title April 30, 2008, and we made a request in May 2008, and our rights were infringed. That's the complaint that went to trial. The earlier proceedings were all injunction proceedings in terms of what were the rights on the easement and what could the project company do. But the allegations in the counterclaim were only talking about recent events when they filed it. They filed the counterclaim in July. Recent events. What the trial court did was, even after she denied them leave about a year earlier to submit an amended account for tortious interference, and she explained all the reasons why that was prejudicial to the district, she then allowed their expert to testify, essentially supporting the counterclaim that she didn't allow them to. Now can I ask you a question? Sure. Did you object to any of the evidence of pre-April 2008 interference on the part of the district during the injunction trial? Did we object to whether or not? They could introduce evidence of pre-2008 interference at the injunction trial. I'm sure there were many objections. I don't know that the district, as a general rule, objected to anything that was before 2008. Okay. You were given an opportunity to depose their expert on the question of his damages, were you not? Indeed. And you did. Yep. And you introduced evidence about what you did or did not do prior to 2008, didn't you? Ultimately we did in our case, but that was after the court allowed their expert to testify. Yes. And your objection to their expert testifying was what? Exactly the one that I just set forth, that the counterclaim only dealt with recent events. Damages and the harm that they were seeking relief for, as a matter of damages, should have been those May through June time period, and we objected because their expert had a damage model going back to 2007. That's what the objection was, and it was overruled. Once the court overruled that, it allowed him to testify. Well, of course, the district was entitled to defend itself, and it defended itself as the best way it could, not very successfully as it turns out, but certainly they weren't barred from submitting evidence once the court allowed the expert to testify. The third grounds for reversal, Your Honor, are that the damages award was against the manifest weight of evidence. We've raised two issues in that respect. The expert's damages model depended upon sort of a but-for world, and he said that construction could have started back in 2007 and that the district was responsible for 18 months of delay, and the full $36 million all flows from that $36 million of that 18 months away. And as we point out, their principal, Mr. Schultz, testified that he did not go seek financing other than preliminary discussions until quite late in the game. He says he decided to check with his title insurer about whether he could insure over the dispute with the district, the easement dispute, and he found out that he could even without paying any additional premium. Once he got that title insurance, he had a loan commitment within about two weeks. Everything went into normal course, and then he was able to close by April 30, 2008. It was a very short period of time, and he admitted on the stand, Your Honors, that he could have gotten the title insurance over the easement dispute at any time. So that entire period between 2007 and 2005, at any time he could have gotten the title insurance, gotten his financing, closed on the property, and as I pointed out, three and a half months from the date of closing until the injunction which resolved the easement dispute. So the district could not be responsible for 18 months of delay when, in fact, he could have gone in at any time. Basically what you're saying is, I think you're not disputing that the district activity precluded the parties from doing anything on their property for that period of time. You're saying that because it took them so long to hit upon a remedy that eventually worked, your client shouldn't be penalized for that because they could have discovered that sooner and gotten the financing sooner. It sounds like that's what you're saying. We are, that is what we're saying, Your Honor, is that the district first went to court. The district went to court to get a declaration regarding the scope of the easement rights. At no time. It sounds to me like this is a game of gotcha. Since they didn't figure it out sooner, then okay, don't penalize my client for that. They should have figured it out sooner, although we were doing something that was intentionally preventing people from conducting a legitimate business activity. I mean, that sounds like what you're saying. That doesn't seem quite right to me. It's more of a question of proximate cause, Your Honor. It's that they did not, the lay was that they didn't acquire the property, and they didn't get their financing, and they didn't acquire the property. They needed the financing to acquire the property, and they didn't do that. The district was not responsible for either of those things. But hold on one second. What benefit would it have been for them to get financing if they couldn't access the property because you were blocking it? You would have to ask them, Your Honor, because that's exactly what they did. The easement dispute was not resolved at the time that they got the title insurance and got the financing and completed the acquisition. It was pending just the way it was. But they say it was delayed by what you did. It was delayed. You filed in 2006, I think, is that right? 2006, I believe. Pardon? I believe it's 2006. 2006 you filed. They said this stuff all started in 2005 as soon as you found out what they were going to do with the property, and that it delayed their financing because it made no sense for them to get financing if they couldn't get on the property. And that's why it's against the manifest way to the evidence, Your Honor, because they were able to get their financing while that easement dispute was raging. So it was not correct that they couldn't get their financing. We did not cause the delay. They could have gone in and got their financing at the earliest moment. You may not have caused the entire delay. But now the question becomes what portion of the delay are you responsible for? What portion of the delay are they responsible for? So I would say, Your Honor, that as I pointed out, they made their first request May 2nd, and the district did not give them access at that point. Three-and-a-half months later, it was all cleared up by the ruling of the court and the injunction hearing. At most, the district was responsible for that three-and-a-half-month delay period. The expert report was based upon an 18-month period, which is why they're only there until 2005. I think 2007 is when he said it. He said the preliminary stuff for 2007. So that's when he started counting. Now, they've conceded $670,000 damages to you, have they not, in their briefs? Indeed, which is a nice offset against my fee. Well, that's a nice way to put it. Okay. All right. What else have you got? So the second first, unmanifest weight, Your Honor, has to do with the speculative nature of the expert's opinion in the Trump Court's finding with respect to a loan that went out of balance. Under the loan documents, and this is typical in construction development loans, the lender wants to know that all your projected revenues are going to be enough to cover all your projected expenses. And if at any point, based upon your assessments, your projected revenues are short, then the lenders typically have a right to request additional financing. That happened in this case, and the lender did require additional financing, and $24 million of $36 million in damages was extra interest from that extra financing. However, the evidence is undisputed that there were two months when the loan would have been out of balance, totally independent of the district. Had the district not done a thing, the loan would have been out of balance for two months. And it is simply rank speculation as to what a lender would or would not have done. The lender would have had the right to trigger the request for additional financing, and the Trump Court speculated that the lender would not have because two months was a short period. Isn't that what we had the battle of the experts about? Well, the expert also speculated about that, but it's just pure speculation. Speculation. And we've provided your court with similar cases, one from the Southern District of New York, a couple Illinois cases dealing with similar issues where an expert really has no way of knowing. They didn't bring in the banker. They didn't bring in anyone who could really say what the lender would have done. He's just saying, well, two months is short. We don't know what two months is short. We've been through a bad economy here. Banks were getting very, very tough. Who knows what they would have done in a two-month period, and they could have triggered the same amount of additional financing. So for that reason, it's also against the manifest way of the evidence. We would ask that the court reverse the judgment, reverse the damages award, and enter judgment for the district on the deposit company's counterclaim, and I thank you for your attention. You'll be given some time to rebuttal. Counsel? Thank you. I gave him 40 minutes. That's what you get. You don't have to use all of it. Yes, I will. There's no rule that says you have to use it all. I will use as much as the honors think is appropriate, and you can tell me when you think you've heard enough. Good morning, Your Honor. My name is David Gussman. With me is my partner, Jill Anderson. Together we tried this case below. Also with us is our full counsel, Bob Clifford. May it please the court. This is a case, as Your Honor has recognized, of intentional interference with easement rights. The intentional interference began in 2005, and it continued until the trial court put an end to it when she entered her preliminary injunction on August 14, 2008. The alley was blocked that entire time intentionally by the district for the purpose of blocking and interfering with the project. Counsel, what did you say your name was? Oh, it's David Gussman, G-U-S-T-M-A-N, Your Honor. And I was the trial counsel below. So this is a case of an intentional interference with easement. And after a 60-day trial on damages, that's how long this case took at trial, over a two-and-a-half-year period of time, the district comes here today and asks to be absolved of its interference on the basis of two principal legal arguments. One, the Mormon doctrine, which does not apply to the claim that was alleged and proved. And they also seek a solution from this court from their interference on the basis that there's an alleged deficiency in the pleading. They're wrong on the record. They're wrong on the pleadings. The record belies their arguments. I will address Mormon first. The Mormon doctrine has never been in this state or otherwise. There's no court that's ever found Mormon bars the cause of action for tortuous interference, intentional tortuous interference, with easement or any other intentional conduct. All right. The broad proposition I think that you want to make is Mormon has no applicability to an intentional tort. That is the broad proposition. But isn't the more narrower proposition really the question of whether Mormon acts as a bar to the recovery of economic damages in an intentional tort actions where the damages are the very damages that were intended by the tort fees? And I think that falls more in line with intentional interference with contract or prospective economic events. Right. And I agree, Your Honor. And as the trial court below found, those are analogous causes of action where the court in this state long ago in Santucci found that that type of intentional interference with business expectancy or contract is not barred by Mormon. There's no principle distinction between that case and the tort that was alleged and proved here, intentional interference with business easement, especially in the circumstances where the tort started with their knowing that the project company was trying to develop a project. The project company purchased the rights to do so in 2008, obtained a contract. They had the contractual right to use that alley to construct its new building, which finally ultimately did get constructed on the corner of Erie and Michigan. And the intended purpose of the interference was to interfere with my client's business expectancy, its expectancy that it would receive economic benefit. This isn't a situation where they were using the easement to walk across to their home or some other instance. This was a situation where the easement was necessary to begin the demolition of the buildings and begin this project. And it's undisputed that they intentionally interfered, and the court below found that their interference was unjustified. And that was affirmed by this court in 2009. So the only issue before the court is whether this intentional conduct, this intentional interference with easement, is barred by the Mormon doctrine. They have no cases to support their position on that case. The closest case is Santucci, and that case, as the trial court found, is analogous to what we have here, and we respectfully request that the court deny their effort to assert Mormon at this late date. I want to ask you two questions about standards of review before we get into the next issue. We've got a situation here where the trial judge found that the Mormon argument was forfeited. I think she said waived, but really we're talking about forfeiture. They didn't voluntarily do anything. So on that issue, what's the standard of review in your opinion? On that issue, it's abuse of discretion. All right. Now, on whether the doctrine applies or it doesn't apply, do you concede it's de novo? Yes, sir. I think that's a legal question. The question of whether the trial judge abused her discretion or not in finding waiver is an abuse of discretion standard. On that point, there was a misstatement about when that was first raised or actually a misapplication. Maybe it's not a misstatement. It's true it was first raised in a reply brief in the trial court after we rested our case. But as the trial court said, it was unfair to expect the court or us to respond to that in a reply brief. The first time they properly raised Mormon was at the end of the case in the beginning of 2012 when they asserted it in their closing brief. They never asserted Mormon in their pleadings. They never filed a motion to dismiss on Mormon. They never asserted Mormon in a motion for summary judgment. We engaged in a trial for 60 days. It took two and a half years. When I asked your opponent about this, he said they didn't have to. What do you say to that? Well, I say that they did have to, Your Honor, because it's a defense that, among other things, Rule 2613D would require them to assert in their answer. So it's your position they should have asserted it as an affirmative defense? No. Actually, 2613D says affirmative matters or otherwise. So what would be the vehicle? What should they have called it? Well, ideally, when they answer, they should have asserted it as a defense in their answer. Well, they should have labeled it affirmative matters. Or affirmative matters. Affirmative matters. And perhaps, although they didn't do it here, they could have filed a 2615 motion, which is a typical way of presenting this, which would have avoided the trial court spending 60 days of precious judicial resources if, in fact, they were right. Now, we've maintained— Didn't the effect of the 615 motion just strike part of the prayer for damages? Well, if it had been granted, if the court found Mormon barred it, then I think at that stage what we would have done is repled our case. We would have repled— Well, the motion would have only gone to the damages, which is 2617 is the remedy there, and it says you have to be afforded an opportunity to replete. And so you're saying you would have replied, and by being stripped of that, you were prejudiced. That's true. And among other things, had the Mormon document been presented, I'd like to think we would have looked at the law and found that Santucci said long ago, if you plead intentional interference with business expectancy, you don't have a Mormon problem. The facts that were presented below and the damages that were found support both theories. And so we were deprived of that opportunity until the end of the trial, and that was the surprise and prejudice. The suggestion in the briefs that we weren't surprised has no basis in the record. I think it is a huge surprise that at the end of a trial someone would assert a Mormon defense against an intentional tort. And it was certainly a surprise to us that that was a defense that they were going to principally rely upon later or here. Now, Mr. Gustman, the flip side of the surprise argument is the issue about the judge denying leave to amend. Yes. And then the trial takes place, the economic witnesses testify, and then it's their position and suddenly this cause of action resurrected itself. What's your response to that? My response is that is totally unsupported by the record. This case was about the 18-month delay that our expert determined when he submitted in January of 2009, eight months before the trial, a report that on the first page of which, and it's in the record at Record Volume 23, C5743. This is January 12, 2009. The first page of the report discloses the 18-month delay period, and it discloses damages between $50 and $86 million. At that stage, the district, if they wanted a jury, should have asked for a jury. They asked for a delay. They asked for severance, which we did not oppose. They then had eight months, eight months to engage in whatever discovery they wanted, and they engaged an expert to respond to our expert's charge of 18 months delay. There was no surprise here, Your Honor. They knew about this 18-month delay long before the trial started and even before the trial judge denied our request to amend the pleading to add the additional count. This case was tried for 60 days on whether or not their interference caused an 18-month delay in the construction. I'm astonished that they stand here today and suggest otherwise. It was tried on whether or not significant damages were caused. Now, we asked for $66 million in damages. The court awarded 36. Is it correct you have conceded the $670,000? It is, Your Honor. $670,000. It is, and I'm glad it was taken. I'm going to get it off the table right away before it's over. It covers most of their attorney's return. Well, they're hoping it's not enough. Well, knowing the district, they'll find more for them. Let me go back. Explain to me the difference between, you know, the injunction was issued fairly quickly, wasn't it? Yes, it was. All right. And how did we get between the alleged three months and the 18 months? The record... How did that cause the 18-month construction delay? They started interfering in 2005. In the pleading, we actually say they put the interference, began the interference in 1998. We allege that in our counterclaim. But they began interfering in 2005 because once they learned of the plans, the record is undisputed. They blocked the gate. They used their police force to prevent us from entering the alley. And they never at any time... For how long, though? For three months or three years? No, actually, from 2005 until the court entered the... But you never asked for an injunction until three months before? No, and the judge addressed that when they argued below that that was laches, that we were barred. She said, in her opinion, we were not barred by waiting as long as we did. We were engaged in settlement... Were there ongoing discussions during that period? There were. There were settlement discussions, Your Honor, that were ongoing during that period that she addressed. They don't challenge that here. And the record does not support the statement that counsel made that for the first time it was May of 2008 that we wanted access. We said in our counterclaim to their... Remember, this started with them suing, the district suing, the project company in 2006. And they admitted in their pleading that they had sole dominion over the alley. We responded by saying, that's not legal. We asserted affirmative defense saying, that's not legal. We negotiated with our client negotiator for over years of time before they finally got to the point where they went in and asked for an injunction. So it's not a three-month delay. Actually, one could argue, and we might well have argued if we had an expert that would have supported it, that the delay period goes farther back than 18 months. Our client got the purchase agreement in 2005. They began selling units in 2006. They paid Tara $3.5 million in 2005. They spent $17 million between 2005 and when the preliminary injunction was entered in order to develop that property, all along trying to get access. That's what the record shows. Now, do you agree that the lion's share of the damages that were eventually awarded by Judge Pantley were attributable to... I'm sorry, let me say it differently. Wouldn't the loan have been out of balance anyway? No, Your Honor. Tell me why not. I will tell you why not. The loan would not have been out of balance for several reasons, as our expert testified to at trial. The loan would not have been out of balance in the Butt IV case because in the Butt IV case, that means the case where they hadn't interfered. The expert report said we would have begun closing in March of 2010. If you don't attribute the two months, as the court did, to the delay, then it goes two more months. So we wouldn't start closings for two months later. We still had seven-plus million dollars in the bank to cover that period of time. As the trial judge said, even a two-month delay, as long as the bank was aware that this money was going to... even if we didn't have the money in the bank, the bank was aware that closings were imminent, and closings would have been aware had there not been blockage. And the closings would have been imminent, and it would have resulted in $50 million of closing proceeds to cover that loan. It's very different than the actual case. In the actual case with the blocking, we were $28 million away and 20 months away from the first closing because of the delay to the beginning of the demolition and the construction. It's a very different circumstance. But perhaps the most important thing, and it's not challenged in the reply brief, is at trial, and we point this out in our brief at I think page 48 or 49, when their expert was asked, do you have an opinion as to whether or not refinancing would have been necessary had they not interfered, he did not have an opinion to that. He could not say that we would have incurred additional refinancing costs. Whether you're out of balance is one thing. Whether it's going to cost you something is completely different. So they have no evidence, by their expert or otherwise, to contradict what the court found. So not only is your finding well supported by the evidence, it's certainly not against the manifest weight of the evidence on this additional mezzanine financing. A couple of points, Your Honors, I think I've covered the points I wanted to cover on Moorman. On the pleading itself, there are a couple of things that I do want to say I think are evident from the briefs. And in the case that was decided by this court a month ago, Hayes, in Ray Hayes, not this panel, but this court, even if there was some defect in our pleading, which we say there is not, the pleading states a cause of action for intentional interference. It doesn't specify the 18 months, but it arguably goes back to 1998. In the end of the day, ultimately that is a question for an expert to determine what the actual, what was actually delayed, how much did it actually delay the project. And our expert in the court found was credible on the 18-month delay. But even if you have a pleading defect, the sine qua non of this issue is whether or not they can prove prejudice. And they cannot prove prejudice on this record. They want to ignore everything that happened in the trial court. Not surprising. As I said, once they became aware in January of 2009 that there was an 18-month delay, they took pretrial discovery as much as they wanted, and they got two extensions for the trial. Then we began trial. During that trial for the next year and a half, we put on witness after witness after witness on the issue of whether this was an 18-month delay to support our expert's position. They never objected once. They then re-deposed our principles, two of whom are here in court today, two more times during the trial, each, and took another deposition of our expert. Then they put on their own evidence at trial. They cross-examined our witness, our expert at trial, for 14 days. There is no prejudice here. I mean, it was painful, 14 days. And then they put on their expert to challenge our expert on whether or not it was 18 months or there were damages. They called our witnesses in their case on the 18-month issue. This case was fully tried, fairly tried, on the issue of whether or not the delay that they admittedly, the interference that they admittedly engaged in delayed us, delayed the start of the project for 18 months. And on this record, they can show absolutely no prejudice. And Hays is on all fours on that issue. I have two questions that I haven't posed to your opponent yet, but I'm going to on rebuttal. They make two arguments that are interesting arguments. One is a jurisdictional argument vis-à-vis the damages, and the other one is a standing argument. Now, standing is problematic for them because standing is an affirmative defense, which is not raised in waive. Now, that's the Supreme Court's focus. But the other one is a jurisdictional argument. They seem to suggest that the court let the jurisdiction to enter a judgment for damages pre-April 2008. They do. That seems to be their argument. They argue that based on three cases, and those three cases are contrary to the cases that we cite, and the cases are easily distinguishable on this basis. In those three cases, the court said the trial court did not have jurisdiction to enter relief that neither party requested. In this case, in our complaint, in our counterclaim, we requested damages. And the court position is money is money. Money, damages are actual damages. Money is money. If the judge had said after all of this, you get damages and you can have the alley, that would have been something that would be beyond the relief that we requested or that anyone defended. But as in Hayes and in the cases we cite, including one Supreme Court case actually called Stoll, and I wanted to point this out to the court, Stoll is a case they cite for the appellate level, but if you go to the Supreme Court level in Stoll, that case finds that in that case, the litigants did not properly assert the Mormon argument, according to the court, at the Supreme Court level, and the Supreme Court said it's forfeit. The question, forfeiture or chai of the standing issue? Standing itself. You have, you're wearing two different hats here in this time frame. You're wearing one hat from the time you signed the contract with Tara until you close, and then you're wearing another hat from the time you close until you get use of the alley and the tent. So now, tell me why you have standing to raise the damages that you allege that you suffered pre-April, was it April 30th, 2008? Yes. We had standing for several reasons. As is reflected in the record and in the contract I think that your Honor mentioned earlier this morning, we obtained the rights to use this alley in 2005. We retained all the rights necessary to develop this alley. We had a contractual right to use that easement. We had, I don't know whether you call it a license or not, but we had the right to do that, and that is undisputed in the record, and we point that out in our brief. In addition, it's undisputed that the testimony was that we had 24-7 access to use that alley from 2005 until we closed. We should have had 24-7 access. We didn't, but that was the evidence. And we put in $3.5 million, an additional $17.1 million, which further gives us the right to use that alley pursuant to the contract. Now, it was at trial there was a suggestion in a couple of the questions, before trial actually, to our witnesses as to whether or not we had standing. And we were concerned that they might actually try to assert a standing defense at trial. But they never did. They never asserted it once, and they never asserted it here. They never asserted here that we did not have standing. And there's a reason. There's a very simple reason, which really is why I think they make these pleading arguments. They waived the standing argument. We had it anyway, but they waived any challenge to our right for standing. And as this court itself has found in Suburban Auto in 1999, if you waive standing at trial, you've waived it. And they know they've waived it. And they haven't asserted it here, Your Honor, so they've waived it here. Well, they do make the argument in the brief that there was a lack of standing here. Actually, it's kind of. But anyway, let me get to this question. Assume for a moment that the issue is not waived. What is the right of a licensee to sue for intentional interference with easement? As opposed to an owner of either parcel. You know, Your Honor, because the answer is we didn't brief it below in terms of that particular question because I never raised it. Oh, my best guess. Whether we're a licensee or not, my response is that we have the same right, and there's no case that says we don't. We have, among other things, the equitable right to assert that. Are you basically saying that the rights of the owner to whatever privileges the easement grants are delegable? Yes, Your Honor, I am saying that. And they were delegable to us. We intended to use those rights for our economic advantage, and we were deprived of those rights for the time period prior to closing on April 30th. So had they raised the issue, we had those rights, Your Honor. They didn't raise the issue. I don't know why they didn't raise the issue below, but I think it's because they didn't think that that was a very good defense. That's what I have to think. But it wasn't raised below, and it was tried as though we had those rights from the time we engaged. I would also point out they sued us in 2006. They sued us saying we want a declaration that you cannot use this alley. So they recognized that we had standing in 2006 to sue us. They also sued Tara. But in the final analysis, they never asserted that as a reason why we aren't entitled to damages, and that's why it's not addressed by Tribal Court. They did address it. They did assert a standing argument below, but it was different. It was an argument that whether or not the project company had the right to assert damages for other entities that we controlled or owned, and the court properly rejected that, and that's not subject to appeal here. Let me just check. I don't even know where I am on the time. No? You've got time. You've got plenty of time. Okay. Let me ask a question that hasn't been asked yet. I think they raised the statute of limitations issue of one year on the tortious interference with prospective economic advantage. What's your response to that? They did raise the statute of limitations on the case that was actually tried, the interference with easement, and as the trial court properly found below, it does not apply to either of those torts. It was a continuing interference. Well, you're alleging a continuous tort. Yes, we're alleging a continuous tort. Also, the trial court found as well that there is a provision that says even if you're beyond your statute, if you're sued, when you counterclaim, you have the saving statute. So I think that's the answer. I didn't see that in their brief other than to say we might have raised that. Had we known you were asserting an 18-month delay or damages? I mean, they have this what I would call a mythical world of what didn't happen at trial. I mean, they can't say if we had known because they knew. They knew. They knew about the 18-month delay. They tried a case for two and a half years on the 18-month delay. They can't say we would have asked for a jury. Why? Because they never did. Never once. There is no prejudice to them in this case. This was fully and fairly tried at great length and expense by the parties of both sides and with great patience, I might add, by the trial judge, who rendered what you could argue is a compromise or a ruling that did not give us that. Clearly, it did not give us everything we wanted. She found against us on certain points. She was very careful in the way she looked at this case. They've cited no prejudice of any objections that were sustained. This was fully and fairly tried, and the district is here, and I understand why the appellate lawyers might be here today asking for this absolution by these legal arguments, but I respectfully request that this court not give them that absolution. Their legal arguments are not accurate, and in any event, they were both waived, and there is no legitimate argument that the damages that we tried and proved were beyond, were anything other than well supported in the record and are clearly not beyond the manifest way of the evidence. Counsel, thank you. Counsel, Revelle. I'm sorry, Your Honor. Revelle, why don't you take about ten minutes. Thank you, Your Honor. I have one question, though, I want to start out with. What is this jurisdictional argument that you made? Are you suggesting that they didn't pray for damages in the complaint, and the judge would work on damages, or what are you alleging is jurisdictional? The jurisdictional argument is they had a counterclaim that said that we were injured from a defined set of events in May and June 2008. I have a counterclaim here, but that's not what it says. It does get some preliminary background. The district erected a gate so that it could unilaterally and illegally control access to the alley in regular use. Right, and it says that recent events. In connection with installing the gate, the district erected posts that narrowed the entry to the alley. What happened here was, as I see it, the district also stores as many as four garbage dumpsters in the alley, further obstructing the project company's free access. The problem is there is one paragraph in here that says recent events. There's no question about that. But it occurs to me that if what you were having was trouble with the time frame that they were alleging, you should have asked for a bill of particulars, or you should have asked to strike the complaint as being conclusive. It wasn't. And there was all sorts of evidence in this trial of what went on from 2005 on, wasn't there? There was no question there was evidence about things that had happened before, but we were entitled to reasonably rely on two things. We were entitled to rely on the counterclaim, and it may be that we read it differently, but I read the counterclaim as talking about events that occurred, that they were complaining they were taking relief. Assume that that's correct. Yes. How does the awarding of damages for the period of 2005 to April the 30th constitute an award of damages on a non-justiciable issue? The justiciable issue is damages, and the court certainly had jurisdiction of you, them, and the question of what damages should be paid. The question here really is should we allow them to amend their complaint to include the allegation that your behavior went all the way back to 2005? Your justiciable case here based upon a divorce case where they handed some result, relief that was never even asked for of any kind. I mean, I don't know why you make the argument it's non-justiciable. We make it non-justiciable because we believe that the cases we provided, that's what they provide. There were only slight differences in the relief requested in the pleadings and actually awarded in some of these cases, and there's two different lines of cases, and the line of cases that we've brought the court's attention to, Kelly v. Orrico, Inouye J.B., American Standard v. Baskerville. Ligon v. Williams, Inouye the marriage, McFarland. Yeah. You know, for example, McFarland v. Town of Bourbonnaise is a good example. In that case, the complaint, they were complaining that he wanted wages for one year. That's what was in the pleading, and then at trial there was evidence about many years where the man had not been paid, and so that's what the damages award, and the court reversed. The court reversed. They said, wait a minute, you had a pleading here that said one year, and you awarded damages for multiple years. It's outside the pleading. You can't do that. But there was evidence here throughout this trial, including in the injunction state where there was no objection whatsoever as to the time frame of the interference, of interference going all the way back to 2005, and this complaint, this counterclaim, I've read this thing cover to cover. This is pretty vague as to exactly when all this behavior took place. In fact, in many of these paragraphs there is no word about when it happened, and now there are some paragraphs in here that says recently they're doing this, nevertheless in recent months the district has done such and such. But the fact of the matter is, it occurs to me that what you've got here is a complaint for damages, and now the question is what damages could they prove? And, you know, everybody tries this case. You've got an expert that goes all the way back to 2007. You depose the expert. He testifies to it. You get to oppose it, and now we're turning around and saying it's not justiciable? Yes, and the reason, Your Honor, is that they give history in here, but they're not seeking relief. The counterclaim was not seeking relief for those earlier periods. The counterclaim is very clear. It says we came into title on April 30, 2008, and we want to do things. Your comment really makes another argument that I think is worth looking at. Mr. Dutton says that there was a substantial amount of evidence that they basically were entitled to get these damages going back to 2005, and they chose not to go forward with that, and that means they're patting themselves on the back for allowing them to just go forward with the 18 months, and it goes that much further than that. And I think there is an argument that the trial court and the record have a lot of information that would allow that argument to go forward. They're basically making the opposite argument. Tell me why we should go with yours. I'm not forgetting it. Okay, and the reason, Your Honor, is that there has to be a nexus, there has to be a connection between conduct and harm. There has to be approximate cause, legal causation. So the fact that they mentioned that the district was doing something in the alley at the time when it was owned by Terra Museum, and they had not yet requested access, and they had not yet got their ducks in a row to start going with this development, is a nullity. It does not matter. It's not harm to them. It's not harm to them. Point of a pause. If they are a licensee of Terra and have full rights to use that easement, and you block it, why do they have to ask you to take the blockage down first before they say you violated the easement rights? But they never came to the district and said we want to use the alley. So where is the harm? Because they could use it, but you blocked it. They don't have to come to you and say you're blocking it. When you talk about the second law, you're incorrect. They did not ask for damages from April the 30th on. The only thing they asked for is in addition to the foregoing, meaning the injunctive relief, the project company requests the court award the project company its actual damages resulting from district interference as well as its cost and for such other further relief as unjust and equitable. There is no word about the period of time they're asking for that award. But it was not only me or not only the district that interpreted it that way, Your Honor, because this came up when the project company sought to amend their complaint to add the new clause of action, a different claim, which would have required proof of different elements. It would have required the proof of who it was that they lost contract rights with or who they had a prospective advantage if they had lost, probably the one witness who said he wouldn't buy a condo because it wasn't going to close in time and it wasn't going to be ready. But be that as it may, this complaint does not ask for only damages for a period of time beginning with April the 30th of 2008. It just simply doesn't, and I have it here. Right, but Illinois is fact pleading, and the first incident that they raise is interference with them? Interference with their interests? Great, 2-6-15 motion to strike a complaint is being conclusory. No fact pleading, but there was no motion. Right, but the circuit court did not only rely on the fact in denying their motion to amend, did not only rely on the fact that it was a new clause of action. Clearly that was part of it. She also relied on the prejudice of the district for the now much more expanded period of damages. Two years, two years before this trial actually started and long before the deposition of their expert was ever taken. Right, but the fact that they have an expert who wants to testify on things that aren't in the district's view and in the trial court's view framed by the complaint, framed by the counterclaim, that happens all the time. And what's the proper remedy there? You file your motion to bar the expert. The district was surprised. The early proceedings here were injunctive. What are the rights on the easement and can they get going? That's what was resolved there. And the district went into this trial entitled to rely on the face of the counterclaim that did not mention particular events affecting them before they acquired title, even if it had a general damages clause, and they were entitled to rely on the detailed ruling by the trial judge that that would be improper and unfair. And it's not until you're into the trial, mid-trial, and the court allows their expert. We preserved the objection. The court allows their expert to open it up to the full 18-month period and all that. Okay. So then they have to start responding to that. But they were entitled to rely on this, and it was improper to sandbag them that way. And so it exceeds what the pleading, respectfully, Your Honor, we believe that it exceeds what the pleading provided with conduct after April 30th. Okay. That's the answer to my question. Now you get your 10 minutes. Okay. Thank you, Your Honor. I appreciate that. Thank you very much. I took an awful lot of time from you. There was a question here with respect to the motion, the 362 motion, whether or not the district was prejudiced. And there was a lot of discussion about there was additional discovery and there was a lot of time in the pleading. But that was not the only prejudice. They want to amend to add this additional claim. We would have had a right to seek a jury trial. There's no question about that. That's a constitutional dimension. Allowing them to add a new claim at this late date would deprive us of that and would be improper. Mr. Ruffin, I understand the jury trial argument. Yeah. All right. And it's a little ex post facto. What do you think the actual claim that was tried and upon which the trial court awarded damage is? What little niche does that fall in? Was it trespass on easement or interference with easement? It should have been trespass on easement. That's what it should have been. And the fact that she allowed the broader scope of the damages, we've had lots of discussion here about it and we've raised it in our brief. But the court was trespass on easement. The economic loss doctrine aside. Yeah. Okay, let's put that aside for a second. Couldn't we read the record as saying that the damages were awarded on one of the counts of the counterclaim other than simply trespass? Well, they phrased it interference with easement. They phrased it as trespass. Count one was interference with easement. Conjunctive damages. Count three was trespass as to one parcel. It appears to be relating to the gate only, but regardless. So that's what was tried. So I'm not sure I'm understanding the court's question. Because you're saying that there was suddenly this different cause of action that was created post-trial and upon which the trial court awarded damages. And had you known that that would have been the claim that was tried, you would have filed a jury demand on it. We would have filed a jury demand. We would have raised additional defenses. We would have brought the Tort Immunity Act. The damages that could have been possible for the two months that they put in their counterclaim were modest. Had the district been fairly aware throughout the case that they were going to – that they had a proper claim pending for damages going back to that early period, then there was many things they would have done. That would have been a significant enough change that they could have certainly brought the jury. They could have raised tort immunity, statute of limitations, and substance abuse. They could have raised tort immunity and sent for a defense on one of the other claims, couldn't they, in terms of some of the damages? Whether they could have or could have not, the fact that there's a new count that's being pled, it would have triggered their right to do that. But their position is they didn't need to plead it. It was covered by the existing counts. I'm not sure I'm understanding. Just go ahead. It would have been – we're saying how are they prejudiced by not bringing in this new count. There could have been a whole host of strategic decisions that would have gone differently had they known at an earlier point that the legitimate issues to be tried as framed by the pleadings were the full scope. That's not what they expected. And they relied upon the trial court saying, no, you don't get that time frame. No, the trial court never said you don't get the time frame. The trial court said we will not allow – I won't allow you to file a new claim, a new cause of action, tortious interference with prospective economic damage. The trial court never said I will not allow you to argue events that happened between 2005 and April of 2008. They never said that. And I would suggest, Your Honor, though, that where their counterclaim refers to interference after they obtain title, that's what the limits of the trial should have been. And for them to come in and say, wait a minute, we want to talk about all kinds of interference long before we obtain title and that we have never requested access. When was the gate put up? The gate was put up a year earlier. They raised that as interference. You locked it. You locked it before April the 30th of 2008. And that's under their theory. Yes, but they had not obtained title and they had not made a request for access. They hadn't. And once they obtained title and made a request for access, three and a half months later it was all resolved. It could have been resolved at any time. So you can't say that the district caused them 18 months of damage. It wasn't resolved at any time because it wasn't until the injunction was issued that it was resolved. They said the reason it wasn't resolved was because the district was recalcitrant. They wouldn't listen. There were ongoing negotiations and nobody paid any attention. They just would not come to any conclusions. To just kind of blithely say, well, it would have been resolved, it was resolved because the judge resolved it after an injunction hearing. I don't think that's the same thing. But I would suggest, Your Honor, though, that after they obtained title and made their first request, it was only three and a half months, not 18. And to be fair to the record, even after they got the injunction, the district had to be held in contempt for violating it. I believe that was reversed, Your Honor. I believe the record was that that was reversed in the appellate court. You had ‑‑ I thought we affirmed it. The injunction order was affirmed. It was affirmed. But then there ‑‑ let me make sure. It was reversed? Yes. So the contempt, the district was held not in contempt. People acted? That had to do with a police officer, a district, some altercation between someone and a police officer. Okay. But the point of it is you hired a policeman to stop them from using the thing. After the court enters an injunction, it tells you you have to let them use it. I mean, it occurs to me that you've got a continuous court here that started in 2005 and never ended until after the issuance of an injunction. You guys were going to prevent them from using this alley no matter how you could do it. Your Honor, the district believed it was asserting its easement rights with one of the parcels. I'm sorry. Its rights with one of the parcels where there were no easement rights. That's what they did. No question about that. It was a good faith argument that they tried to bring to the trial court. And unfortunately, they didn't get a resolution of that for two years. The subject third parcel, the northernmost or the southernmost of the three parcels? You know, I'm not sure, Your Honor. All I know is that the allegations were that 670, was it not? The parcel that did not have the easement? 670? Pardon? 664 had no easement. 670 and the 668 had it. So there was no question that the legal question was not answered in the district's favor overall. But it wasn't that they were not in good faith at all. They believed that what was being done or what was being requested was against the rights of one of the parcels, that they were incorrect on that. You know, so be it. But it's not like they were just randomly trying to deprive someone of rights. They were trying to assert their own easement rights. Well, I'm sure Mr. Dubson would disagree with that. But, you know, be that as it may, his argument, and there's some support in the record for that, is that perhaps they should have thought damages for longer than 18 months, because this stuff went on since 2005. And their own expert, Your Honor, said that the earliest point in time when they would have been ready to move forward was in 2007. So it goes back to that proximate causation issue that I raised. The fact that there's interference, if interference doesn't cause any damages, there's not a legal recovery for that. And so if they weren't ready to move forward until 2007, according to their expert. Now our argument is that because it was so easy for them to get the financing and acquire, they could have done that in 2007. And within three and a half months, this would have all been legally resolved. And so you can't hold the district responsible for the 18 months. It's not just interference. It has to be interference that proximately caused them harm. And that's why there's a problem here. If I could have one minute to look at my notes real quick to see if there's anything else. I do want to correct one thing I said earlier. I was asked by I believe Justice Hoffman as to the standard of review on forfeiture. And I think I incorrectly said that that would be abuse of discretion. I believe it is a matter of law. And so, therefore, it would be a de novo determination as to whether or not there was a forfeiture. It's abuse of discretion because it's based upon facts leading up to it and the question of grudges. We don't decide the grudges. The trial judge does. He has no use of discretion. I would point out, and this was alluded to, that one of the reasons they shouldn't be allowed to amend at this late date is that because of the third-party issue, they're not able to. That would be an amendment to state a new claim. That would be an amendment to state a new claim. What about really an amendment to increase the time frame of the damages incurred? And we would say that. That would be an amendment to conform the pleadings of the proof. Right. But there the prejudice would be that the district is entitled to rely on the circuit courts limiting the case the way that she did, not allowing them to do the claim. She did not allow a new claim. You're entirely correct. She did not allow the claim. Right. There were references here to that the project company was surprised with respect to the assertion of economic loss. Again, that was on, I don't know, maybe 13 or 14 days into the damages trial. That was the first time that it came up. It was right around the time that their witness had first testified, where the court allowed this expansive time period. That's when the district came in and raised economic loss. Because the district raised it in a reply brief in support of the motion for directed judgment at the close of the counterplaintiff's case, before the district put on their defense. Exactly right. All of their witnesses have been testified by that. That's right. But the district, rightly or wrongly, expected that the court would not allow the expert to testify for the expansive period, because of what had happened before with the pleading that had been submitted, and because of the face of the counterplaint. If the district didn't expect the expert to testify, why did you declaim it? Well, you're entitled to depose what they're going to say. We understand that, but you generally don't depose somebody for something you don't expect them to talk about. Unless you want to protect yourself from them talking about it and trying to get them to commit. Yeah. I think a lot of lawyer's practices, Your Honor, would be to find out what the expert is going to say, and then you take out whatever issues with the court as to whether or not it's proper or not. And so I don't think you can ascribe anything negative to the district with the fact that it's just a deposition. You can ascribe lack of prejudice. Certainly they were given the opportunity. Well, they had an opportunity to see what he was going to say, but that doesn't mean that they weren't prejudiced by the trial court after previously denying the additional claim, letting the case go forward on that basis. All right. If I could have one moment, let me just see if I have anything to close. Let me just speak briefly as to the argument that was made about this is on our Manifest Weight argument. And they said that there was lots of money in the bank, so therefore the two months of out of balance wouldn't have been an issue. And what that's confusing is some financial concepts here.  The total amount of revenue that's expected to come in and the total amount of expenses. How much cash you have in the bank on a particular day is irrelevant to that. It's out of balance if the revenues are short for the total projection. And it has not been tested that it was short by the two months. And our point on that is it's speculation as to what the bank would have done, whether the bank would have cared that there was money in the bank or not, or been more concerned that there wasn't enough money to get through the whole project, which was really the issue. That's really the issue. That's all I have, Your Honor. Counsel, thank you. That will be taken under advisement. Court is adjourned. Thank you.